IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                           Case Nos.:  3:14cr98/TKW/EMT
                                                         3:18cv428/TKW/EMT

TERRANCE D. GOODMAN

---

## REPORT AND RECOMMENDATION

This matter is before the court upon a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" and an Amendment/Supplement thereto filed by Defendant Terrance D. Goodman ("Goodman") (ECF Nos. 704, 708).   The Government filed a response (ECF No. 711), and Goodman filed a reply (ECF No. 716).   Also pending is Goodman's motion for partial summary judgment (ECF No. 717).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After a review of the record and the arguments presented, the undersigned recommends that the § 2255 motion be denied without a hearing, *see* Rules 8(a) and (b), Rules Governing Section 2255 Cases, and that the motion for summary judgment be denied as moot.

## I.    PROCEDURAL BACKGROUND

On December 16, 2014, Goodman and twelve others were charged in a superseding indictment [1] (ECF No. 131) with offenses related to their alleged participation in a large-scale drug trafficking and money laundering conspiracy. Goodman was charged in Count One with conspiracy to distribute and possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, and in Count Two with conspiracy to use a communication facility (a telephone and cellular telephone) to facilitate the commission of a felony.    The Government states it based its case against Goodman on cooperating witnesses and law enforcement seizures (ECF No. 711 at 2, citing ECF Nos. 1, 2, 334, 496).    This includes specific information about Goodman's alleged illicit activity provided by co-defendant Aston Ingram during post-arrest statements.    An identical narrative description of Goodman's involvement is contained in both the affidavit in support of the criminal complaint and in the Pre-Sentence Investigation Report ("PSR") (*see* ECF No. 2, Affidavit/Complaint ¶ 5; ECF No. 496, PSR ¶ 22).

---

[1] As to Defendant Goodman, the superseding indictment expanded the scope of the conspiracies charged in Counts One and Two, amending the start dates of the conspiracies from January 1, 2014, as charged in the original indictment (ECF No. 39), to January 1, 2012.

Case Nos.: 3:14cr98/TKW/EMT; 3:18cv428/TKW/EMT

On March 18, 2015, Goodman, represented by appointed attorney Stephen Sutherland, entered a guilty plea "as charged" before the undersigned magistrate judge (ECF Nos. 333–337) (this Report includes a detailed description of the plea colloquy, because most of Goodman's allegations relate, directly or indirectly, to whether he entered his plea voluntarily, intelligently, and knowingly).

At the plea colloquy, as is routine, the court placed Goodman under oath and warned him that any false responses or false statements during the proceedings could lead to a separate prosecution for perjury (ECF No. 561 at 4). The court advised Goodman that he did not have to enter a plea of guilty and explained the rights he would be giving up by doing so (*id.* at 8−10). The court referenced the written Plea Agreement (ECF No. 335), which Goodman confirmed he had read in its entirety, reviewed with his attorney, and understood fully (ECF No. 561 at 10−11).[2] The undersigned twice reiterated the penalties Goodman faced, as set forth in the agreement, to wit, a mandatory minimum term of ten years' imprisonment on Count One and up to a maximum of life, and a maximum term of four years' imprisonment on Count Two (*id.* at 11−12, 19). Twice, Goodman affirmed he understood these

---

[2] Goodman's initials appear on every page of the agreement (ECF No. 335). Moreover, Goodman confirmed that the initials were his and that the initials indicated he had read and understood "every page, every word, [and] every line in the document" (ECF No. 561 at 10−11).

Case Nos.: 3:14cr98/TKW/EMT; 3:18cv428/TKW/EMT

penalties (*id*. at 12, 19).    Goodman also affirmed that Mr. Sutherland had discussed the Sentencing Guidelines with him, and he acknowledged he understood that counsel's predictions about how the guidelines would ultimately apply to his case were not binding (*id*.)    Goodman's answers did not appear rote.    When asked whether he knew parole had been abolished, and that he would serve approximately "day-for-day time" on a sentence of incarceration, Goodman responded that he did not know that.    He nonetheless assured the court that this did not change his desire to enter a plea, and he did not need to talk to counsel about the new information (*id*. at 13−14).    The undersigned specifically asked Goodman, "if this sentence is greater than what you are hoping for or expecting, do you understand that you do not have a right to withdraw your plea," and he responded "yes, ma'am" (*id*. at 16).

The court next inquired about the factual basis for the plea.    Goodman admitted having signed the three-page "Factual Basis for Guilty Plea" (ECF No. 334) and, again, having initialed each page of the document (ECF No. 561 at 14). The Factual Basis identified Goodman as a transporter/distributer of cocaine for co-defendant Rodney Butler, and stated that Goodman had been engaged in this illicit conduct "for at least the past few years" (ECF No. 334 at 1).    It noted that Goodman, alone and in conjunction with co-defendant Terrance Stone, mailed or

transported cocaine/currency for co-defendant Butler, and that Goodman conspired to distribute and possess with intent to distribute in excess of five kilograms of cocaine for the benefit of the conspiracy (*id*. at 1−2).   Goodman did not inquire about the contents of the Factual Basis or mention any "amendments."   He agreed that he understood the amount of cocaine involved in the conspiracy was five kilograms or more and by entering a guilty plea he was giving up the right to have a jury determine the amount of cocaine for which he should be held accountable (ECF No. 561 at 14−15).   Goodman also acknowledged having reviewed the relevant Eleventh Circuit Pattern Jury Instructions with his attorney, namely, Criminal Offense Instructions 100, 99, and 98 (*id*. at 15−16; *see also* ECF No. 334 at 3). He agreed that he understood what the Government would be required to prove if the case went to trial (ECF No. 561 at 15−16).   Mr. Sutherland, as an officer of the court, confirmed that the men had gone over the instructions (*id*. at 16; *see also* ECF No. 334 at 3).

The court specifically inquired, again as is customary, about Goodman's relationship with his attorney.   Still under oath, Goodman specifically denied having any complaints at all about the way counsel had represented him (ECF No. 561 at 20).   Goodman also affirmatively agreed he had had enough time to discuss

his decision to plead guilty with counsel and was satisfied with the representation counsel had provided.    Goodman affirmed that the written documents he had previously discussed with the court contained his entire agreement with the Government, and he denied having been pressured, threatened, or intimidated into entering the plea (*id*. at 18−20).    Before Goodman formally entered his plea of guilty, the court offered him a final opportunity to consult with his attorney or ask questions of the court, and he declined. (*id*. at 20−21).    In sum, there was nothing irregular or unusual about the thorough plea proceedings that would have alerted the court or counsel for either party that any of the issues Goodman now complains of existed.    The undersigned therefore recommended that the plea of guilty be accepted, affording the usual period for objections (ECF No. 337).    No objections were filed, and the district court adopted the recommendation that the plea of guilty be accepted (ECF No. 344).

A Draft PSR was filed on April 23, 2015.    Goodman was characterized as a courier and distributor for the conspiracy and was held accountable for more than five (5) kilograms of cocaine, the quantity he had admitted during the plea colloquy (ECF No. 410, Draft PSR, ¶¶ 97, 111).    His total offense level after a three-level downward adjustment for acceptance of responsibility, was 27 (*id*. at ¶¶ 125−134).

Goodman's criminal history category was II (*id*. at ¶ 156).   The applicable guidelines range of 78 to 97 months became 120 months due to the statutory mandatory minimum of ten years on Count One, of which Goodman had been advised during the plea colloquy (*id*. at ¶¶ 184, 185).   The Probation Officer noted two, separate, pending state charges ("escape conspiracy (2013)" and "armed burglary (2014)"), and that if Goodman had been convicted of either of those before the conclusion of the instant federal offense, he would have qualified as a career offender with an advisory guideline range of 262 to 327 months (*id*. at ¶ 207).

Mr. Sutherland filed a response to the Draft PSR on May 7, 2015, indicating there were no objections to the "score sheet calculations" (ECF No. 429).   He also filed a motion to continue the May 28, 2015, sentencing due to counsel's unavailability (ECF No. 430).   The court granted the motion, as well as a second motion to continue for the same reason (ECF Nos. 438, 463, 465).

The Final PSR was entered on the court's docket on June 30, 2015 (ECF No. 496).   The sentencing calculations therein were unchanged from those in the Draft PSR.   The offense conduct is described in paragraphs 17 through 93, and Goodman is mentioned in only two of those paragraphs.   In Paragraph 31, Goodman is included in a list of six people whom lead-conspirator Rodney Butler used to

transport cocaine from Texas to Florida (ECF No. 496, PSR ¶ 31).    Paragraph 22 of the PSR tracks the affidavit in support of the criminal complaint, rather than the factual basis for the guilty plea, and (as noted above) contains information provided to law enforcement by co-defendant Aston Ingram after Ingram's arrest.    More specifically, Ingram stated that during 2014 Butler sold large amounts of cocaine to Goodman, and that Goodman intended to distribute it in the Panama City, Florida, area. Ingram stated that Goodman mailed some cocaine back to Panama City rather than personally transport it, and some of this cocaine was intercepted by law enforcement.    On June 24 and 25, 2014, Goodman was supposed to receive two parcels totaling one-half kilogram of cocaine as part of the conspiracy, but law enforcement foiled the plan.    According to Ingram, Goodman stopped communicating with Butler after his arrest regarding the intercepted cocaine, and Butler tried to hire someone to kill Goodman because Goodman owed Butler approximately $60,000 (ECF No. 496, PSR ¶ 22).

Before the third scheduled sentencing date, and almost two months after the Draft PSR was filed, Goodman filed a pro se motion requesting a hearing relating to counsel's alleged ineffectiveness (ECF No. 488).[3]    The court held an ex parte

---

[3] Goodman styled his filing as a "Motion to Hold *Nelson* Hearing."    Pursuant to *Nelson v. State,* Case Nos.: 3:14cr98/TKW/EMT; 3:18cv428/TKW/EMT

hearing on July 14, 2015, at which Goodman orally moved to withdraw his guilty plea based on counsel's allegedly ineffective representation (ECF No. 619 at 3). The court asked Mr. Sutherland to respond to Goodman's allegations, and counsel outlined events leading up to Goodman's guilty plea, including discussions the two men had about sentencing possibilities (*id.* at 12−18).    After hearing from counsel, the district court indicated it did not understand the basis for Goodman's ineffective assistance of counsel claim, and it saw neither any prejudice to him from his plea nor any basis for withdrawing the plea (*id.* at 18).    The court indicated its intent to review the transcript of the plea proceeding, and the following day it denied Goodman's motion in a written order[4]  (ECF Nos. 508; ECF No. 619 at 25).

    In its written order, the district court concluded, based on the testimony at the hearing and its review of the plea proceedings, that there was no basis to conclude that Goodman's guilty plea was unknowing and involuntary because he had been

---

274 So. 2d 256 (Fla. 4th DCA 1973), an indigent state-court defendant who wishes to discharge his court-appointed attorney due to ineffective assistance may request a hearing before a Florida court to determine whether the attorney is in fact rendering ineffective assistance.   There is no similar procedure in federal court, although a defendant is of course entitled to effective assistance of counsel, and district courts routinely conduct inquiries into the merits of defendants' claims regarding ineffective assistance, as the district court did here.   Thus, although some portions of the record refer to the hearing on Defendant's motion as a "*Nelson* hearing," it is more accurately deemed an ex parte hearing and will be referred to herein as such.

[4] The ex parte order was originally sealed, and at sentencing the court directed that it be unsealed (ECF No. 518).

thoroughly advised as to the possible penalties he faced, and when he entered his plea he understood that the weight of cocaine attributable to him could include amounts that did not necessarily pass directly through his hands (ECF No. 508 at 1−2). It also found Goodman was not misled as to his career offender status, and further, even if counsel had told Goodman he could avoid career offender status by pleading guilty, he suffered no prejudice because he was not subject to career offender enhancements (*id.* at 2). Based on these findings, the district court easily concluded there were no grounds for allowing Goodman to withdraw his plea.

On July 28, 2015, the district court sentenced Goodman above the applicable advisory guidelines range to a term of 180 months on Count One and a concurrent term of 48 months on Count Two, followed by concurrent terms of five years and one year of supervised release, respectively (ECF Nos. 524, 525, 576). Goodman's extensive, and largely unscored, criminal history provided the basis for the court's above-guidelines sentence (ECF No. 576 at 5−16). Goodman addressed his criminal history in his remarks to the court, claiming that he had accepted plea bargains in many of his prior cases because it was "convenient" (*id.* at 11), but he made no mention of any disagreement with the facts in the PSR[5] and raised no issues

---

[5] Mr. Sutherland mailed the PSR to his client so Goodman would have the opportunity to review

other than to ask for leniency.    According to defense counsel, no 5K1.1 motion was

filed because Goodman entered into his plea agreement later than the co-defendants

and Goodman's debriefing did not provide anything substantial to the Government

(*id.* at 4).    Mr. Sutherland filed a Notice of Appeal and a Motion to Withdraw based

on his client's dissatisfaction with his performance, and the court granted the motion

(ECF Nos. 526−528).

Robert A. Harper, III, Esq., was appointed to represent Goodman on appeal

(ECF No. 537).    After reviewing the record, Mr. Harper filed a brief pursuant to

*Anders v. California*, 386 U.S. 738 (1967) and moved to withdraw.    The Eleventh

Circuit's independent examination of the entire record revealed no arguable issues

of merit, and it granted counsel's motion and affirmed Goodman's convictions and

total sentence (ECF No. 683).

Goodman timely filed the instant motion to vacate on March 9, 2018 (*see* ECF

No. 704 at 22).[6]    He raises a total of fifteen (15) grounds for relief in the motion

---

it before meeting with Sutherland (ECF No. 576 at 3).

[6] A pro se inmate's pleading is deemed filed at the time it is placed in the prison mailbox or delivered to prison authorities for mailing.  *See Houston v. Lack,* 487 U.S. 266, 276 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule"); *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (absent evidence to the contrary, court assumes that a pro se petition is delivered to prison authorities for mailing the date it was signed).

and in the supplement thereto.    The overlapping grounds for relief can be divided into four general categories:    ineffective assistance of trial counsel, ineffective assistance of appellate counsel, trial court error, and the involuntariness of his plea. Goodman's claims center around his assertion that he was not factually guilty of the charged conspiracy because he only knew one, or at most two, of the conspirators. He claims that counsel's erroneous advice about the facts and law surrounding his case and counsel's failure to investigate rendered his guilty plea unintelligent and involuntary.    He also asserts that he should have been permitted to withdraw his plea before sentencing, but a combination of ineffective assistance of counsel and trial court error prevented him from doing so.

While Goodman's § 2255 motion was awaiting review in this court, he filed a mandamus petition in the Eleventh Circuit Court of Appeals, seeking an order compelling this court to rule on his motion.    On July 2, 2019, the Eleventh Circuit issued an order noting it would hold the petition in abeyance for sixty days to allow this court to rule on Goodman's motion (*see* ECF No. 735).    In light of Defendant Goodman's request for an expedited resolution of his motion, the normal time for filing objections to this Report and Recommendation will be shortened, as set forth below in the Notice to Parties.

Case Nos.: 3:14cr98/TKW/EMT; 3:18cv428/TKW/EMT

II.    ANALYSIS

A. General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."    *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"    *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).    The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual

development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055).

Absent a showing that the ground of error was unavailable on direct appeal, a court

may not consider the ground in a section 2255 motion unless the defendant

establishes (1) cause for not raising the ground on direct appeal, and (2) actual

prejudice resulting from the alleged error, that is, alternatively, that he is "actually

innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).

To show cause for procedural default, a defendant must show that "some objective

factor external to the defense prevented [him] or his counsel from raising his claims

on direct appeal and that this factor cannot be fairly attributable to [defendant's] own

conduct." *Lynn*, 365 F.3d at 1235.    A meritorious claim of ineffective assistance

of counsel can constitute cause.    *See Nyhuis*, 211 F.3d at 1344.

Goodman has requested an evidentiary hearing at various points in these

proceedings.    An evidentiary hearing is unnecessary when "the motion and files

and records conclusively show that the prisoner is entitled to no relief."    *See* 28

U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015);

*Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).    Not every claim

of ineffective assistance of counsel warrants an evidentiary hearing.    *Gordon*, 518

F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).    To

be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.    *Lynn*, 365 F.3d at 1239.    Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

B. Ineffective assistance of counsel—Grounds 1, 2, 3, 7, 9, 11 and 13

Seven of Goodman's claims are fairly construed as alleging ineffective assistance of counsel at the trial court level.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.    *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United*

*States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).    To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.    *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). *Strickland*'s two-part test also applies to guilty pleas.    *Lafler v. Cooper*, 566 U.S. 156, 162−63 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).    A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial.    *Id.* at 163 (quoting *Hill*, 474 U.S. at 59).    "A defendant's 'after the fact testimony concerning his desire to plead, without more, is insufficient to establish' prejudice."    *Pericles v. United States*, 567 F. App'x 776, 782 (11th Cir. 2014) (quoting *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)); *Rosin v. United States*, 786 F.3d 873 (11th Cir. 2015).    This means a defendant must provide more than his own conclusory statements in support of his position.    A defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."    *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).    In applying

*Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315−16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and

without the distorting effects of hindsight.    *Strickland*, 466 U.S. at 689.    To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."    *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.    "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness."    *Chandler*, 218 F.3d at 1314. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."    *Chandler*, 218 F.3d at 1316 n.18.

    To establish prejudice, defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.    "The likelihood of a different result must be substantial, not just conceivable."    *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).    For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."    *Lockhart v. Fretwell*, 506 U.S. 364, 369−70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th

Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).   Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.   *Glover v. United States*, 531 U.S. 198, 203−04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   *Id.* at 203.

To establish ineffective assistance, Goodman must provide factual support for his contentions regarding counsel's performance.   *Smith v. White*, 815 F.2d 1401, 1406−07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333−34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).   Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.   *Denson*

*v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).    This is true regardless of whether the issue is a trial or sentencing issue.    *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel);    *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."    *Chandler*, 218 F.3d at 1313.    This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.    *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).    "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent

attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).    The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."    *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.    A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

    1.  Ground One

    In Ground One, Goodman alleges counsel was constitutionally ineffective because he misadvised Goodman about Goodman's career offender status, thus "inducing" him to plead guilty.    Goodman, who was the last of the co-conspirators to plead guilty (*see* ECF No. 576 at 4), claims that had counsel given him the correct advice he would not have pleaded guilty but would have gone to trial.    In fact, in

the affidavit appended to his § 2255 motion Goodman claims he has been trying to withdraw his guilty plea since the day he received his PSR (ECF No. 704 at 28).

Goodman alleges that the only guideline provision Mr. Sutherland gave him was "a copy of the Career Offender provisions from § 4B.1 [sic] of the U.S.S.G. manual."   However, pursuant to U.S.S.G. § 4B1.2, comment. (n.2), it is U.S.S.G. § 4A1.2 that explains which prior convictions and sentences are counted under the guidelines and which are excluded, for example, because they are too remote—an issue on which counsel allegedly misadvised Goodman.   Section 4A1.2(e)(1) specifically provides that, to be counted, a prior conviction or      incarceration on any sentence exceeding one year and one month must have occurred within fifteen years of the defendant's commencement of the instant offense conduct.   Thus, Goodman asserts, he could not have qualified as a career offender due to the age of his prior offenses, and counsel's purported advice to the contrary—that "they could go back 30 years if they wanted to"—"induced" him to enter a guilty plea to try to avoid the enhancement, or as he states, caused him to enter a plea "based on the fear of a nonexistent penalty" (ECF No. 704 at 27, 48).

The Government argues Goodman has not shown either deficient performance or prejudice.   At the plea proceeding, Goodman specifically acknowledged that no

one could promise him how the guidelines would be calculated in his case, that the only prediction he could count on was that he would be sentenced between ten years and life imprisonment, that he understood the sentence was "totally up to the district court . . . within the parameters" of ten years to life, and that no one had pressured him, threatened him, or intimidated him in any way to get him to enter the plea (ECF No. 561 at 12, 19–20).    Together these statements undermine Goodman's claims. More important, a sentence based on a career offender enhancement could never be greater than the penalty of life imprisonment, a penalty Goodman faced—and clearly knew he faced—at the time of his plea.    Thus, the record refutes Goodman's claim that his plea was based on the fear of a "non-existent penalty."    Finally, the district court's order after the ex parte hearing would seem to resolve this claim, as the court found that Goodman "was not misled as to his career offender status" (ECF No. 508 at 2).    If he was not misled, this court cannot find counsel was constitutionally ineffective. For all of these reasons, no relief is warranted on this claim.

    2.  <u>Ground Two</u>

    Goodman contends that his attorney was constitutionally ineffective because he did not conduct any pretrial investigation, including contacting witnesses who could allegedly verify his innocence.

"A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant." *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) (quoting *United States v. Jackson*, 659 F.2d 73, 74 (5th Cir. 1981)).    Goodman may not use these proceedings to raise a factual challenge to his innocence after admitting his guilt under oath.

Furthermore, Goodman's assertion that counsel failed to investigate is undermined by his sworn statements at the plea colloquy, during which he expressed satisfaction with counsel and indicated that he had no complaints "at all" about how counsel had represented him (ECF No. 561 at 20).    These solemn declarations under oath carry a strong presumption of verity and present a formidable barrier in subsequent collateral proceedings.    *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977).

Finally, Goodman's claim that he was not involved in the conspiracy in 2012 is a red herring.    The superseding indictment amended the commencement date of the conspiracy, charging that it began on January 1, 2012, instead of January 1, 2014, as was initially charged.    Goodman asserts that three women with whom he was romantically involved in 2012 could have verified his whereabouts, and thus his

innocence, on every day of 2012 when he was not in jail (ECF No. 704 at 29).    His affidavit, however, discredits their knowledge of his activities and basically admits his involvement in drug trafficking.    Goodman states "didn't none of them know that I had started selling drugs because I always used my car hauling company as an excuse for why I traveled so much and why I kept a lot of money" (ECF No. 704 at 29).    The Factual Basis Goodman signed did not specify when he became involved with the conspiracy, only that he had been involved in illicit conduct "for at least the past few years" (ECF No. 334).    The only specific year of Goodman's involvement mentioned in the PSR is 2014.    Therefore, any "alibi" for the year 2012 only, would not have absolved Goodman of liability.    More significantly, he admitted under oath at the plea colloquy that the facts contained in the factual basis were true and correct (ECF No. 561 at 14).

The record reflects that no relief is warranted on this claim.

3.  Ground Three

Goodman asserts that his attorney was constitutionally ineffective because counsel advised Goodman there were "no defenses" against the charge of conspiracy, and had Goodman understood there were possible defenses he would have gone to trial (ECF No. 704 at 7).    Goodman claims that counsel could have

used Goodman's "lack of knowledge" or "lack of involvement" in the conspiracy as a defense, and counsel's failure to offer these defenses as an option led to Goodman's decision to enter an uninformed guilty plea.    He complains that it would have been impossible for defense counsel to discuss any possible defenses if he did not know Goodman's side of the story and did not interview witnesses.

The court advised Goodman at the plea colloquy that by entering a plea of guilty, he would give up any possible defense that he might have to the charge (ECF No. 561 at 9).    As before, Goodman's complaint about counsel's failure to investigate is foreclosed by Goodman's professed satisfaction with counsel at the plea colloquy as well as his admission of guilt under oath (*id.* at 20).    Additionally, the "defenses" he contends counsel could have raised would not have led to an acquittal.

The PSR characterized Goodman as a courier and distributor for Rodney Butler from Texas into the Northern District of Florida (ECF No. 496, PSR ¶ 97). Because of the nature of his role, Goodman was one of the least culpable individuals in the conspiracy (*see id.*, PSR ¶¶ 108–119), and his base offense level reflected this lower level of involvement (PSR ¶ 125).    However, the relatively minor level of his involvement does not establish a complete defense.    And, through the signed

Factual Basis, Goodman admitted that he was dealing with Butler and co-defendant Stone (ECF No. 334).

A conspiracy is an agreement to accomplish an unlawful plan.   18 U.S.C. § 371.   The essence of the conspiracy is the agreement to commit an unlawful act. *United States v. Chandler*, 388 F.3d 796, 805 (11th Cir. 2004).    Repeated transactions between individuals buying and selling large quantities of illegal drugs may suffice to establish that the participants were in a single conspiracy.    *United States v. Reeves*, 742 F.3d 487, 497 (11th Cir. 2014).    A defendant may be found guilty of participating in a conspiracy if the evidence demonstrates that he was aware of its essential nature, 'even if he did not know all its details or played only a minor role in the overall scheme.'"    *Id. (quoting United States v. McNair*, 605 F.3d 1152, 1195–96 (11th Cir. 2010) (*quoting United States v. Guerra*, 293 F.3d 1279, 1285 (11th Cir. 2002))); *see also United States v. Toler*, 144 F.3d 1423, 1428 (11th Cir. 1998) (noting that, once a drug conspiracy has been shown to exist, "a defendant can be convicted even if his or her participation in the scheme is 'slight' by comparison to the actions of other co-conspirators").    The Government is not required to prove that a defendant participated in every stage of the conspiracy or had direct contact with each of the other alleged co-conspirators.    *Reeves*, 742 F. 3d at 497 (citing

*McNair*, 605 F.3d at 1196; *see also United States v. Pacchioli*, 718 F.3d 1294, 1303 (11th Cir. 2013)).    Therefore, in light of Goodman's admitted involvement with Butler and Stone, and the facts as set forth in the PSR, he did not have a viable defense to the conspiracy charges, and he has not established that counsel was constitutionally ineffective.

### 4. <u>Ground Seven</u>

Goodman asserts that counsel "labored under an actual conflict of interest" at the ex parte hearing on Goodman's pro se motion to withdraw his plea, because counsel was placed in the adversarial position of having to defend himself against Goodman's allegations of ineffectiveness.    Goodman posits that for Mr. Sutherland to have supported Goodman's motion to withdraw his guilty plea it would have required counsel to admit that he had deceived his client and misadvised him to plead guilty, a position adverse to counsel's own interests.

The Government maintains that Goodman's assertion is belied by the record, because the district court had the opportunity to evaluate counsel's performance at the hearing at which it presided.    It also indicates that Goodman's assertion appears to be undermined by relevant case law, citing *United States v. Fuller,* 312 F. 3d 287, 291–93 (7th Cir. 2002) and *Mickens v. Taylor*, 535 U.S. 162 (2002).

In *Mickens*, the Supreme Court held that to prevail on a claim of ineffective assistance of counsel based on a conflict of interest, a defendant must establish that a defense attorney actively represented conflicting interests in a way that adversely affected counsel's performance, as opposed to a "mere theoretical division of loyalties." *Mickens*, 535 U.S. at 171, 175; *see also Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). In *Fuller*, the Seventh Circuit found that an attorney who "intentionally exposed himself to malpractice or professional disciplinary action in the course of arguing [defendant's] motion to withdraw . . . was actively representing [defendant's] interests at the expense of his own, rather than the reverse." *Fuller*, 312 F. 3d at 292. The Seventh Circuit went on to say that even if the defendant could demonstrate that counsel actively represented competing interests while arguing the motion to withdraw the guilty plea, he could not demonstrate an adverse effect on counsel's performance.

In the case at bar, the ex parte hearing of July 14, 2015, began as an inquiry into the effectiveness of counsel's representation. However, when Goodman first addressed the court, he clarified that he wanted to withdraw his plea, claiming that counsel's alleged ineffectiveness led him to accept a plea to charges based on facts that were "not true" (ECF No. 619 at 3). Goodman also claimed his attorney had

repeatedly told him that he would qualify as a career offender, and Goodman claimed that his guilty plea was an attempt to avoid career offender status (*id*. at 6, 7, 10–11). The district court stated that whether Mr. Sutherland had told him he would be a career offender or not was irrelevant, because Goodman was not scoring out as a career offender, which Goodman would have known in May when he received the copy of the PSR (*id*. at 8–9, 12).    It also advised Goodman that absent a substantial assistance motion, the only benefit to a guilty plea is the three-level adjustment for acceptance of responsibility, because a defendant's criminal history is unaffected by whether he enters a guilty plea (*id*. at 11–12).

At the hearing, Mr. Sutherland summarized his discussions with Goodman leading up to the plea, and in doing so, frankly admitted his uncertainty about the application of the career offender enhancement.    He acknowledged that when Goodman asked whether he would be a career offender, he told Goodman he did not know (ECF No. 619 at 14).    Mr. Sutherland relayed that he requested Goodman's criminal history from pretrial services,[7]  and that even with that information he told his client "I really don't know" and "It *looks like* you qualify" (emphasis added) (*id.*

---

[7]  The preliminary information from pretrial services is not necessarily the same information contained in the final PSR.

at 15).    Counsel advised the court that he concluded that two prior offenses (that might have otherwise qualified as predicate career offender offenses) "probably would not count" because AUSA Goldberg filed a notice indicating he only intended to use Goodman's two prior convictions for possession of cocaine as "404(b) evidence" and because "Mr. Goldberg did not move for an enhancement" (*id.* at 15–16).    Mr. Sutherland recalled telling Goodman words to the effect that "no one seemed excited about career offender or whatever, so probation will ferret that out" (*id.* at 16).    Goodman then conveyed to Sutherland his position that if he was a career offender, he "might as well" go to trial (*id.*).    Based on this conversation, Mr. Sutherland planned on taking the case to trial until he received a call from Goodman's mother or girlfriend requesting that he visit Goodman at the jail. During that jail visit Goodman indicated his willingness to sign the plea and cooperation agreement (*id.*), although the reason for the change of heart was not disclosed.    Counsel speculated that Goodman's rationale for filing the motion to withdraw his plea later, was that his client, whom he described as a "pretty smart individual," determined after reviewing the PSR that he had nothing to lose by going

to trial, because Goodman was not expecting a substantial assistance motion after his debriefing with the DEA (*id* at 16–17).[8]

Goodman complained at the ex parte hearing that counsel had never asked him "what happened," and the district court again told him that this was irrelevant because he had signed the plea agreement, sworn under oath that the facts supporting it were true, and he had not been misled about his sentence (*id*. at 18).    Goodman complained about the inaccuracy of the Factual Basis, and the lack of a legal basis for the charges, and the court told him that he should not have signed the Factual Basis or entered a guilty plea because "[n]obody was holding a gun to your head to sign it, sir" (*id.* at 21).

In sum, contrary to Goodman's suggestion, the transcript hearing of the ex parte hearing, viewed in its entirety, does not indicate that counsel was laboring under an actual conflict of interest that adversely affected his performance. Counsel, a seasoned federal court veteran, did not deny he had been uncertain about the application of the career offender adjustment, and stated that he had told his client as much.    This is not an admission that would suggest counsel was protecting

---

[8] Actually, had Goodman gone to trial, his advisory guidelines range without the three-level acceptance of responsibility adjustment, would have been 120 to 135 months.

Case Nos.: 3:14cr98/TKW/EMT; 3:18cv428/TKW/EMT

himself despite the interests of his client, as Goodman suggests.    Ground Seven fails.

### 5.  Ground Nine

Goodman next claims his attorney was constitutionally ineffective "for giving patently erroneous advice regarding the law in relation to the facts" of his case (ECF No. 704 at 78).    Specifically, he contends that Mr. Sutherland gave him erroneous advice about the law on conspiracy and how it related to the facts of his case.    He asserts that counsel "totally misrepresented the elements of the crime the Government would have to prove," so Goodman was unable to determine if his guilt could be proven (ECF No. 704 at 76).

At the plea proceeding, the undersigned explained to Goodman that were the case to go to trial, the court would read the appropriate jury instructions and explain to the jury that the Government would have to prove each of the elements stated therein, beyond a reasonable doubt, to find Goodman guilty (ECF No. 561 at 15–16).    The court relied on the signed Factual Basis, which stated that Goodman had previously reviewed pattern criminal offense instructions numbers 100, 99 and 98 with counsel (ECF No. 334 at 3).[9]    The factual elements were not recited on the

---

[9] Eleventh Circuit Pattern Offense Instruction 98 governs possession with intent to distribute

Case Nos.: 3:14cr98/TKW/EMT; 3:18cv428/TKW/EMT

record, but both Goodman and Mr. Sutherland confirmed that they had reviewed these instructions together, and Goodman averred that he understood what the Government would have been required to prove at trial (ECF No. 561 at 16). Goodman also acknowledged at the ex parte hearing that he understood, pursuant to conspiracy law, that he did not have to have personally handled five kilograms of cocaine to be held accountable for such an amount (ECF No. 619 at 25).

Goodman now contends counsel did not tell him that the Government had to prove he had knowledge of the conspiracy, and with that knowledge, to have voluntarily joined it. *See United States v. Dixon*, 901 F. 3d 1322, 1343–44 (11th Cir. 2018). Eleventh Circuit Pattern Jury Offense Instruction 100, which Goodman and counsel stated on the record that they had reviewed, governs conspiracies and the issue of knowledge. Goodman claims that Mr. Sutherland must not have been reading directly from the jury instructions because counsel never mentioned the "knowledge" component (ECF No. 704 at 80). Goodman points out that at the ex parte hearing, counsel told the court he and Goodman had reviewed the list of all the

---

controlled substances in violation of 21 U.S.C. § 841(a)(1); Offense Instruction 99 governs the unlawful use of a communications facility in connection with a controlled substance offense in violation of 21 U.S.C. § 843(b); and Offense Instruction 100 governs controlled substance conspiracy in violation of 21 U.S.C. § 846 and/or 21 U.S.C. § 963. Each instruction clearly sets forth the elements the Government is required to prove beyond a reasonable doubt to secure a conviction.

Case Nos.: 3:14cr98/TKW/EMT; 3:18cv428/TKW/EMT

other co-defendants and Goodman "denied knowledge of any of the co-defendants" (ECF No. 619 at 13).    Of course, this blanket denial was false, as Goodman admits even in his § 2255 motion to dealing with Butler (*see, e.g.,* ECF No. 704 at 84, 87), and he also admitted in the Factual Basis for Guilty Plea that he worked in conjunction with co-defendant Terrance Stone to further the illicit activity (ECF No. 334 at 2).[10]

As proof of counsel's allegedly incorrect advice about the issue of knowledge, Goodman notes counsel's comment at the ex parte hearing:    "I read to [Goodman] that the three things the Government had to prove was [sic] that the conspiracy existed, that he joined the conspiracy, and that the conspiracy did these things there" (ECF No. 619 at 24).    The fact that counsel may have inartfully stated the law at the hearing does not prove that he misstated the law or did not read the pertinent instructions to Goodman in their entirety prior to the plea, as both he and Goodman confirmed during the plea colloquy.

---

[10] Goodman asserted at the ex parte hearing that he had told his attorney that the factual basis was not true—"me and Terrance Stone has never did this [sic]"—and that counsel told him that he would ask AUSA Goldberg to change the factual basis.    Goodman said he did not recall having a copy of the factual basis, and since it was not read at the plea proceeding, he did not know whether it was changed.    Mr. Sutherland pointed out that Goodman had initialed the pages of the factual basis, and he did not recall any discussion about it being changed (*see* ECF No. 619).

Case Nos.: 3:14cr98/TKW/EMT; 3:18cv428/TKW/EMT

Furthermore, Goodman did not have to have knowledge of each and every conspirator or the entire scope of the conspiracy in order to be guilty of the charged offenses. *Reeves*, 742 F. 3d at 497 (citing *McNair*, 605 F.3d at 1196). Thus, he has not shown prejudice as required to establish a violation of *Strickland*, and this claim is without merit.

### 6.  Ground Eleven

In a similar claim, Goodman asserts that Mr. Sutherland was constitutionally ineffective because he allegedly did not advise Goodman about the relevant law pertaining to the facts of his case (ECF No. 704 at 85). Goodman asserts that, despite having purchased drugs from co-defendant Butler, he had no knowledge of the greater conspiracy (*id*. at 87).

This assertion is contradicted by Goodman's acknowledgment, under oath, that he had read and discussed the jury instructions with counsel, because Offense Instruction 100 addresses the issue of knowledge. Furthermore, he does not have to have known every member of the conspiracy in order to be considered a part thereof. *Reeves*, 742 F. 3d at 497 (citing *McNair*, 605 F.3d at 1196). Goodman has not shown a violation of *Strickland* and relief should be denied on this claim.

### 7.  Ground Thirteen

In a sort of umbrella claim, Goodman contends he was denied his Sixth Amendment right to the assistance of counsel because counsel's performance was "so inadequate that counsel provided no 'actual' assistance at all" (ECF No. 704 at 92).   Goodman claims that from the first day he met Mr. Sutherland, he expressed his desire to go to trial because the Government's case rested on what he described as baseless accusations.   He asserts he did not know the co-defendants in 2012, when the conspiracy allegedly began, and the Government's theory that Goodman was the person who started the conspiracy in 2012 was completely incorrect.[11]   In this claim, Goodman has not focused on any specific error or omission but instead focuses on counsel's overall representation.   He asserts that "[e]verything that counsel said or did was part of a scheme to get [him] to plead guilty" and that counsel failed to subject the prosecution's case to any meaningful adversarial testing (ECF No. 704 at 97).

The burden is on the accused to demonstrate a constitutional violation stemming from counsel's inadequate representation.   However, the Supreme Court has recognized that in some circumstances, counsel's performance is so deficient,

---

[11]   The basis for this assertion is unclear, as neither the facts in the PSR nor in the Factual Basis set forth or otherwise support this alleged theory.

no specific showing of prejudice is required.    *See United States v. Cronic*, 466 U.S.

648, 658 (1984) ("There are, however, circumstances that are so likely to prejudice

the accused that the cost of litigating their effect in a particular case is unjustified.");

*see also Strickland*, 466 U.S. at 692 ("Actual or constructive denial of the assistance

of counsel altogether is legally presumed to result in prejudice").    One of the

circumstances in which the presumption is warranted is if "counsel entirely fails to

subject the prosecution's case to meaningful adversarial testing."    *Cronic*, 466 U.S.

at 659; *see Bell v. Cone*, 535 U.S. 685, 698 (2002) (emphasizing that counsel must

"entirely" fail, not merely fail at specific points).    This case is not one where the

record reflects a complete denial of the right to counsel.    None of Goodman's

individual ineffective assistance of counsel claims addressed above were

meritorious.    Furthermore, Goodman's sworn expression under oath confirming his

satisfaction with counsel's performance undermines his claim.    This claim is

without merit.

    C.  Ineffective assistance of appellate counsel—Grounds 4, 14, and 15

Goodman raises three separate grounds alleging ineffective assistance of

appellate counsel.    Due process of law requires that a defendant receive effective

assistance of appellate counsel on his direct appeal.    *Evitts v. Lucey*, 469 U.S. 387,

396 (1985).    To prevail on a claim of ineffective assistance of appellate counsel, a defendant must show that (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal.    *Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008); *see Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (holding that claims for ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*).    To determine whether appellate counsel rendered ineffective assistance, the court may consider the merits of the issues the defendant alleges counsel was derelict in not raising on appeal.    *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988); *Reutter v. Secretary for Dept. of Corrections*, 232 F. App'x 914, 917 (11th Cir. 2007) (determining that counsel's decision not to raise a particular argument on appeal, in light of his having raised several important claims, was likely a strategic decision to "winnow out weaker arguments").    Of course, appellate counsel is not ineffective for failing to raise claims that are reasonably considered to be without merit.    *Brown v. United States*, 720 F.3d 1316, 1335 (11th Cir. 2013); *Shere*, 537 F.3d at 1311; *Nyhuis*, 211 F.3d at 1344 (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).    The Government has attached

appellate counsel's *Anders* brief to its response to the § 2255 motion to assist the court in its analysis of these claims (*see* ECF No. 711-1).

  1. <u>Ground Four</u>

Goodman first asserts that Mr. Harper was constitutionally ineffective for failing to argue that the district court abused its discretion by applying the wrong legal standard in denying his motion to withdraw his guilty plea.[12]  In Goodman's pro se motion, he requested a hearing due to trial counsel's alleged ineffectiveness (ECF No. 488).  At the ex parte hearing on the motion, Goodman broadened his claims for relief, adding a request to withdraw his guilty plea based on counsel's ineffectiveness (ECF No. 619).  Goodman generally acknowledges here that the court correctly found, in accordance with *Hill v. Lockhart*, 474 U.S. 52 (1985), that he had not established prejudice sufficient to invalidate his plea, but he maintains that because the request to withdraw his plea was made before sentencing, the proper inquiry was whether he could show "a fair and just reason for requesting the withdrawal" (ECF No. 704 at 60).  *See* Fed. R. Crim. P. 11(d)(2)(B) (allowing withdrawal of plea *prior to* sentencing if defendant shows fair and just reason); *cf.*

---

[12]  Goodman raises this claim as a separate allegation of trial court error in Ground Five of his motion, discussed *infra*.

Fed. R. Crim. P. 11(e) (plea may be set aside *after* sentencing only on direct appeal or collateral attack).   Goodman also asserts that a challenge to the trial court's denial of a request to withdraw a plea has to be raised on direct appeal, because it is neither a constitutional matter nor a jurisdictional matter, and thus that Harper was constitutionally ineffective for failing to raise this issue on appeal.

While Goodman may be correct that the district court did not specifically reference *Hill* or Rule 11 at the ex parte hearing or in its written order, the district court considered the proper standard in resolving the issue.   More specifically, the district court stated both at the hearing and in its written order that it found "no basis" for allowing Goodman to withdraw his guilty plea or to conclude that the plea was not knowing and voluntary (*see* ECF No. 619 (hearing transcript) at 22; ECF No. 508 (order) at 1 (citing *United States v. Mosley*, 173 F. 3d 1318, 1322 (11th Cir. 1999) (affirming district court's denial of pro se motion to withdraw plea, made prior to sentencing but after disclosure of PSR, based on alleged ineffective assistance of counsel))).   Additionally, appellate counsel identified a challenge to the district court's denial of Goodman's motion to withdraw his guilty plea as a "potential" appellate issue, both in terms of the district court's decision and counsel's alleged ineffectiveness (*see* ECF No. 711-1 at 24–29).   The Eleventh Circuit's independent

review of the record confirmed Mr. Harper's assessment of the relative merit of the appeal.    Appellate counsel was not constitutionally ineffective.

    2.  Ground Fourteen

Goodman asserts that, despite his request, Mr. Harper did not argue in the *Anders* brief that Goodman was denied counsel at the ex parte hearing to withdraw his plea.    Goodman claims he was prejudiced by Harper's failure to do so because this argument was a "dead bang winner."    As can be seen from the discussion above, Goodman's evaluation of this issue is overly-optimistic.    The record of the relevant proceedings does not suggest that Mr. Sutherland labored under an actual conflict of interest that adversely affected his performance.    Thus, Mr. Harper was not constitutionally ineffective for failing to raise a meritless issue, such as this one, and Goodman is not entitled to relief.

    3.  Ground Fifteen

In Ground Fifteen, Goodman maintains that Mr. Harper "abandons his role as his client's advocate and actually argues against the appeal [in the *Anders* brief, he filed on July 7, 2016]" (ECF No. 708 at 5).    According to Goodman, Harper's arguments did not meet the standards and conditions set forth by the Supreme Court for an *Anders* brief.    Goodman also claims that he was prevented from filing a pro-

se brief and arguing his claims himself because appellate counsel misrepresented his position on appeal and caused the Eleventh Circuit "to overlook the true nature of the appeal" (*id.* at 17).

Goodman's criminal appeal was docketed on August 7, 2015 (ECCA Case 15-13538).[13]   On January 12, 2016, Goodman filed a pro se motion with the Eleventh Circuit requesting that counsel withdraw and he be permitted to proceed pro se due to counsel's failure to request the transcript from the ex parte hearing of July 14, 2015.   On February 16, 2016, Mr. Harper filed a response indicating that after a "lengthy and meaningful" telephone conversation with his client, counsel had requested the transcript in question.   Counsel noted that the transcript was "necessary to determine whether the district court's denial of the Appellant's *pro se* motion (which the Defendant's [sic] expresses to be his lone complaint and sole basis for seeking post-sentencing review), is proper for appellate review, or whether the Defendant/Appellant should unilaterally abandon his direct appeal, and instead pursue the matter collaterally in a motion for post-conviction relief" (ECCA Case 15-13538, 2/16/2016 Defendant's Response at 3).   On April 27, 2016, the Eleventh

---

[13] The Eleventh Circuit does not assign docket numbers to filings on its docket.   References will be to the date a particular motion or pleading was filed.

Case Nos.: 3:14cr98/TKW/EMT; 3:18cv428/TKW/EMT

Circuit denied Goodman's pro se motion, noting that the only stated basis for discharging counsel—counsel's failure to order the transcripts—was moot.

A corrected appellant's brief, reflecting proper service, was docketed on July 7, 2016. Goodman filed a pro se "Response to Court Appointed Attorney's Filing of Anderrs [sic] Brief" on August 15, 2016, in which he requested that counsel be allowed to withdraw, and he be allowed to proceed either pro se or with new counsel. Goodman identified three issues he wished to raise on appeal (and provided legal citation in support): (1) district court abused its discretion in denying his pre-sentence request to withdraw his guilty plea that was induced by ineffective assistance of counsel; (2) trial counsel's erroneous advice about Goodman's career offender status induced him to plead guilty, thus rendering the plea involuntary, unknowing, and unintelligent; and (3) Goodman was denied his Sixth Amendment right to counsel at the ex parte hearing to withdraw his plea because defense counsel labored under an actual conflict of interest (ECCA Case 15-13538, 8/15/2016 Pro se Response at 14-25).

The Eleventh Circuit's concise January 19, 2017, opinion did not mention the specific content of counsel's Anders brief and did not make note of Goodman's pro se response. It stated, however, that the court's "independent examination of the

*entire record* reveals no arguable issues of merit" (ECCA Case 15-13538, 1/19/2017 Opinion at 2 (emphasis added)).

Goodman filed a Petition for Rehearing en banc on February 24, 2017.   He argued that the three claims he sought to raise in his response to the *Anders* brief were appropriate for appellate review because they were fully developed by the transcript of the ex parte hearing.   He asserted that if the appellate court did not review the claims, they would be foreclosed from any review, because non-constitutional claims challenging an error of law committed by the district court would not be appropriate for collateral review.   The Eleventh Circuit denied the petition without comment on April 3, 2017.

After this court's exhaustive review of the record, the undersigned concludes that Goodman has not shown that if appellate counsel, rather than Goodman, had raised the three issues Goodman set forth in his response of August 16, 2017, that the outcome of the proceedings would have been different.   Indeed, regardless of how the claims might have been presented, or who presented them, at their core they are the same as other claims that have previously been discussed herein and determined to be without merit.   What is more, no additional issues are apparent

that counsel could have, or should have, briefed that would have resulted in a different result for his client. Thus, Goodman has not shown his appellate counsel was constitutionally ineffective, and he is not entitled to post-conviction relief on this claim.

    D. Trial Court Error—Grounds 5 and 6

    Goodman next raises two claims of trial court error. He asserts that the district court abused its discretion by applying the wrong legal standard in denying the request he made prior to sentencing to withdraw his guilty plea (Ground Five) and that he was denied his constitutional right to counsel at the plea withdrawal hearing (Ground Six). Because Goodman has raised the same core claims of error in more than one way in the instant motion, the analysis of his claims is somewhat circular.

    Initially, as discussed *supra*, claims that can be raised on direct appeal, such as claims of trial court error, but are not raised, are generally procedurally barred in a § 2255 proceeding. *Lynn*, 365 F.3d 1234. However, such claims may be considered if a defendant establishes (1) cause for not raising the ground on direct appeal, such as a meritorious claim of ineffective assistance of counsel, or (2) that "a constitutional violation has probably resulted in the conviction of one who is

actually innocent" *Id.* at 1234–35 (citations omitted).    Neither exception applies here.

In Grounds Four and Fourteen of the instant § 2255 motion, Goodman challenged as ineffective his appellate attorney's failure to specifically argue the two allegations of trial court error he now raises.    The undersigned concluded Mr. Harper was not ineffective because the underlying issues were without merit. Therefore, Goodman cannot establish "cause" for not raising the grounds on direct appeal, because counsel was not ineffective for declining to raise meritless issues. *Lynn*, *supra*.    Nor can Goodman establish "actual innocence" of the charges, because he has admitted, under oath, his involvement in the conspiracy. Furthermore, the issues were arguably considered by the Eleventh Circuit in its independent review of the entire record, and as such may not be relitigated herein. *Stoufflet*, 757 F.3d at 1239.    No relief is warranted on either of these claims of trial court error.

E.  Involuntariness of Plea—Grounds 8, 10, and 12

Goodman claims that his plea was involuntary for three reasons, all related to claims that have been previously discussed herein.    He asserts that he did not have the assistance of constitutionally effective counsel when deciding to plead guilty

(Ground Eight); that he did not understand the law as it related to the facts (specifically, he claims he did not know he could not be guilty of a conspiracy of which he was unaware) (Ground Ten); and that counsel failed to advise him of the elements of the crime (specifically, that the Government would be required to prove Goodman's knowledge of the conspiracy) before advising him to plead guilty (Ground Twelve).

A plea of guilty is constitutionally valid only to the extent it is "voluntary" and "intelligent." *Brady v. United States*, 397 U.S. 742, 748 (1970). "[A] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (*quoting Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). "And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley*, 523 U.S. at 621.

Initially, it is unclear that the voluntariness of Goodman's plea was challenged on direct review, generally, or with respect to the three grounds raised here. As to Ground Eight, the court notes that Goodman claimed in his pro se response to appellate counsel's *Anders* brief in the Eleventh Circuit that his plea was

involuntary, unknowing, and unintelligent based on defense counsel's allegedly erroneous advice about Goodman's career offender status (ECCA Case 15-13538, 8/15/2016, Defendant's Pro Se Response to *Anders* brief at 19-22), and this claim correlates in some measure to Ground Eight.   Goodman's pro se brief, however, contained no argument related to Grounds Ten and Twelve of the instant motion,[14] and as such those claims appear to be procedurally barred.   But, assuming for sake of argument that the Eleventh Circuit's "independent review of the entire record," sufficed to relieve the procedural bar as to all three grounds, the court nonetheless finds them to be without merit based on the factual findings in the instant recommendation.

As stated above, the district court found during the ex parte hearing that Goodman had been properly advised by counsel and that he had admitted his guilt under oath.   This finding was not disturbed on appeal.   Moreover, the undersigned has concluded herein that Goodman's ineffective assistance of counsel claims are without merit, and thus Goodman's claim in Ground Eight that his plea was

---

[14] As outlined above, in the court's discussion of Ground Fifteen, the three claims were: 1) the district court abused its discretion in denying Goodman's request to withdraw his plea, based on alleged ineffective assistance of counsel; 2) defense counsel's erroneous advice about Goodman's career offender status induced him to plead guilty, thus rendering the plea involuntary, unknowing, and unintelligent; and 3) Goodman was denied his Sixth Amendment right to counsel at the plea withdrawal hearing because defense counsel labored under an actual conflict of interest.

Case Nos.: 3:14cr98/TKW/EMT; 3:18cv428/TKW/EMT

involuntary because counsel was constitutionally ineffective is likewise without merit.

As to Grounds Ten and Twelve, "Rule 11 imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." *United States v. Symington,* 781 F.3d 1308, 1314 (11th Cir. 2015) (*quoting United States v. Hernandez–Fraire*, 208 F.3d 945, 949 (11th Cir. 2000)). That inquiry "must address three core concerns underlying Rule 11: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *Id*. (internal quotation marks omitted). The evidence of record, including Goodman's own admissions, neither suggests that the plea was unknowing or unintelligent, nor establishes his factual innocence. Rather, the plea colloquy reveals that the three core concerns of Rule 11 were met.

The plea colloquy also refutes Goodman's claims that he did not understand the law or the elements or the crime, as both he and his counsel confirmed during the plea proceedings that counsel reviewed the pertinent jury instructions with Goodman prior to the plea, and those instructions include both the knowledge

requirements and the elements of the offenses to which he plead.   Goodman has not

shown that he is entitled to relief under § 2255 based on an involuntary, unknowing,

or unintelligent plea.

  F.  Conclusion

  For the foregoing reasons, the court finds that an evidentiary hearing is not

necessary for the resolution of any of the claims raised in Goodman's motion to

vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.   Additionally,

Goodman has not shown that he is entitled to relief.   Therefore, Goodman's motion

should be denied in its entirety.

  III.   Certificate of Appealability

  Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that

"[t]he district court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant," and if a certificate is issued "the court must

state the specific issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues

a certificate of appealability.   Rule 11(b), Rules Governing Section 2255 Cases.

  After review of the record, the court finds no substantial showing of the denial

of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

(2000) (explaining how to satisfy this showing) (citation omitted).    Therefore, it is

also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order,

the court may direct the parties to submit arguments on whether a certificate should

issue."    If there is an objection to this recommendation by either party, that party

may bring this argument to the attention of the district judge in the objections

permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.    The Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 704) be

**DENIED**.

2.    Goodman's Motion for Partial Summary Judgment (ECF No. 717) be

**DENIED as moot in light of this recommendation.**

3.    A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 9th day of August 2019.


_/s/ Elizabeth M. Timothy_____
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations **by Defendant Goodman** must be delivered to prison officials for mailing **on or before AUGUST 19, 2019**.  **The Government's response** to Defendant's objections, **if any**, must be filed **within three business days** of the date Defendant's objections are received and filed.[15]  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

---

[15]  The court is aware that Fed. R. Civ. P. 72(b)(2) and 28 U.S.C. § 636 provide a longer period for objections, but as noted *supra*, Defendant seeks speedy resolution of this case, and the Eleventh Circuit has directed that this court rule on the § 2255 motion while Goodman's mandamus petition is held in abeyance for a sixty-day period, which commenced on July 2, 2019.  The court thus finds good cause for shortening the time frame as it is consistent with Defendant's request for a speedy resolution.

Case Nos.: 3:14cr98/TKW/EMT; 3:18cv428/TKW/EMT